<tr>
<tr>

**GODES & PREIS, LLP**
Joseph M. Preis (State Bar No. 212998)
 *jpreis@gaplegal.com*
Benjamin G. Reynolds (State Bar No. 320546)
 *breynolds@gaplegal.com*
300 Spectrum Center Drive, Suite 1420
Irvine, California 92618
Telephone: 949.468.0051
Facsimile: 949.872.2281

Attorneys for Defendants
NICK PERCIVAL; CURITEC, LLC; MARIA FERNANDEZ AND TECH LOGIC, LLC
And Counterclaimants CURITEC, LLC and NICK PERCIVAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| GORDIAN MEDICAL, INC., A Nevada corporation, doing business as American Medical Technologies,<br><br>Plaintiff,<br><br>vs.<br><br>NICK PERCIVAL, an individual; MARIA FERNANDEZ, an individual; CURITEC, LLC, A Florida Limited Liability Company; TECH LOGIC, LLC, A Delaware Limited Liability Company; and DOES 1 through 20,<br><br>Defendants.<br>AND RELATED CROSS-ACTIONS | Case No.: 8:19-CV-02244-JVS-ADS<br><br>**COUNTERCLAIMANTS' OPPOSITION TO COUNTERDEFENDANTS' MOTION TO STRIKE COUNTERCLAIMS**<br><br>[*Filed concurrently with Opposition to Motion to Dismiss Counterclaims*]<br><br>**JUDGE:** Hon. James V. Selna<br>**DATE:** August 24, 2020<br>**TIME:** 1:30 p.m.<br>**CRTM:** 10C |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff and Counterdefendant Gordian Medical Inc., doing business under the trade name American Medical Technologies ("AMT"), has long dominated the wound care products and services market. However, and despite its recent entry in 2018, Defendant and Counterclaimant Curitec, LLC ("Curitec"), co-founded by Defendant and Counterclaimant Nick Percival ("Percival"),[1] has emerged as a viable competitor through its superior business model that elevates product quality over profit margin, and through its tireless recruiting efforts. Instead of improving the quality of its products and services to lawfully compete with Curitec, AMT, under the direction and control of Counterdefendants Joseph Del Signore ("J. Del Signore"), and Sam Muppalla ("Muppalla"),[2] has eluded and ignored regulatory guidelines, wielded legal action as a weapon against competitors, published slanderous statements, and misappropriated Curitec's trade secrets, as exhaustively detailed within the Counterclaims.[3]

In an attempt to conceal their disreputable business practices and unlawful conduct, Counterdefendants have moved to strike averments in the Counterclaims that describe Curitec's superior business model,[4] and that expose AMT's pattern and practice of regulatory violations and unfair competition.[5] These averments should not be stricken as they contribute to the understanding of the Counterclaims as a whole by providing pertinent information regarding the differences in the business models

---

[1] Curitec and Mr. Percival are collectively referenced herein as, the "Counterclaimants."

[2] AMT, J. Del Signore, and Muppalla are collectively referenced herein as, the "Counterdefendants."

[3] *See* ECF Docket Number 39-1, referenced hereinafter as, the "Counterclaims."

[4] (Counterclaims, ¶ 50).

[5] (Counterclaims, ¶¶ 19-25).

implemented by Curitec and AMT, the underlying purpose and motive for AMT's unfair competition and misappropriation of Curitec's trade secrets, and AMT's well-documented pattern and history of disregarding regulatory restrictions and resorting to illicit busines practices to gain a competitive advantage over its rival competitors.[6] Therefore, Counterdefendants' Motion to Strike the Counterclaims (the "Motion")[7] should be denied. However, to the extent this Court grants Counterdefendants' Motion to Strike, in whole or in part, Plaintiffs respectfully request leave to amend.[8]

## II. FACTUAL BACKGROUND

Mr. Percival was previously employed as the Chief Information Officer of AMT, a large medical supply company in the business of supplying wound care products and services to medical care and elder care Facilities. Counterclaims, ¶ 48. Following his departure from AMT [in 2016], Mr. Percival and his wife, Ms. Fernandez, formed Curitec in October of 2018 in an effort to fulfill the long-term care facility market's need for higher quality wound care products and services, which was (and is) dominated by AMT. *See id.* Curitec's strategic business model, which materially differs from AMT, is detailed in the Counterclaims, and, includes, *inter alia*, superior quality products and services, brand consistency, prompt processing and delivery, advanced technologies, transparent cost structure, and specialized recruitment and training. Counterclaims, ¶ 50. Through this business model, Curitec has quickly emerged as a viable competitor and more cost-efficient alternative to

---

[6] Averments "contribut[ing] to a full understanding of the complaint as a whole need not be stricken." *In re Facebook PPC Advertising Litigation*, 709 F.Supp.2d 762, 773 (N.D.Cal.2010).

[7] *See* ECF Docket Number 45, 45-1, and 45-2.

[8] *Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*, No. SACV1801247JVSADS, 2019 WL 6723422, at *6 (C.D. Cal. Oct. 4, 2019) ("Although the complaint has been amended three times, leave should be freely granted. See Fed. R. Civ. P. 15(a)(2).").

AMT, and has expanded its business Nationally (sans California). Counterclaims, ¶¶ 49-51.

Threatened by Curitec's success in the market, AMT, by and through its owner, J. Del Signore, and Chief Executive Officer, Muppalla, have resorted to unlawful, unfair, and fraudulent business practices aimed to destroy Curitec's business, tarnish Curitec and Mr. Percival's reputation, and misappropriate Curitec's trade secrets to unlawfully compete against it. Counterclaims, ¶¶ 52-67.

Beginning on or about November 2019, under the direction and control of its executive officers, J. Del Signore and Muppalla, AMT, by and through its agents, misrepresented to Curitec's existing and prospective customers that it would soon be facing criminal repercussions due to purported illicit activities. Counterclaim, ¶ 53. The source of this slanderous statement was Delaney, a disgruntled former Curitec employee, who falsely claimed that Percival had "hacked into AMT's computer system" on behalf of Curitec in order to steal its trade secrets. Counterclaim, ¶ 54. Without verifying or confirming the accuracy of this baseless accusation from a dubious source, AMT repeated this false hacking accusation during a conference call with its managers, sales team, and executive members, further disseminating slanderous statements about Percival and Curitec company wide. Counterclaim, ¶ 54. AMT also engaged Delaney to act as its agent to spread false and slanderous accusations to Curitec's customers, including the Humphreys County Nursing Home (the "Humphreys Facility"), the Unity Hospice facilities in Tennessee (the "Unity Hospice Facilities"), and the Perry County Nursing Home, Tennessee (the "Perry Facility"). Counterclaim, ¶ 55.

AMT has also misappropriated Curitec's trade secrets obtained through a company-issued laptop stolen by Delaney. Counterclaims, ¶¶ 61-67. The laptop contained proprietary and confidential information accrued by Curitec including: (1) sales reports that contain Curitec's revenue; (2) the identity of Curitec's customers and facilities that have outstanding orders signed by physicians; (3) information

-3-

regarding specific customer and facility orders and products fulfilled by Curitec; and (4) a list of all customers and facilities that Curitec services in the United States. Counterclaims, ¶ 62. Counterdefendants used this proprietary and confidential information to identify, target, and solicit Curitec's largest revenue facilities, including the Prairie Grove nursing facility located in Arkansas, the Humphreys Facility, and Unity Hospice Facilities, and make false reports to regulatory authorities concerning Curitec's business and operations. Counterclaims, ¶¶ 59, 66.

These unfair, unlawful, and fraudulent business practices are not new to AMT and, in fact, are consistent with its well-documented history of skirting regulatory restrictions and overstepping the legal boundaries to monopolize the wound care industry since its inception. For example, AMT paid the Internal Revenue Service ("IRS") $9.8 million to resolve unpaid federal income taxes and penalties of approximately $17.8 million that accrued over a 13-year period from its inception in 1994 to 2007. Counterclaims, ¶¶ 19-21. Incredibly, G. Del Signore, J. Del Signore's father and founder of AMT, acknowledged during an interview with the IRS that he knew AMT had an obligation to file federal corporate income tax returns, but stated that he was just too busy and that he had too much paperwork to take the time to file returns. Counterclaim, ¶ 20. In addition to the massive tax liability accrued by AMT as a result of its executive's deliberate failure to file tax returns over a 13-year period, AMT also paid $35 million and accepted regulatory restrictions to resolve improper and inflated billing and reimbursement practices identified by Medicare, including separately billing for products that had already been billed by another supplier, and seeking reimbursement for products that were not medically reasonable or necessary, and, therefore, not reimbursable by Medicare. Counterclaims, ¶¶ 22-25.

As a result of Counterdefendants' unlawful, unfair, and fraudulent business practices, Curitec has lost existing and prospective customers, including, but not limited to, its contracts with the Humphreys Facility and Unity Hospice Facilities, causing Curitec to suffer lost revenue of over $1,500,000.00, and hindered Curitec's

ability to recruit new employees to expand its thriving business. Counterclaims, ¶¶ 57, 60, and 67. Curitec's loss of revenue has consequently diminished Percival's income derived from the business, which constitutes Percival's main source of income. Counterclaims, ¶ 57.

### III. PROCEDURAL BACKGROUND

On June 23, 2020, Counterclaimants filed their Counterclaims against AMT, J. Del Signore, and Muppalla, averring counterclaims for: (1) Intentional Interference with Contractual Relations; (2) Intentional Interference with Prospective Economic Advantage; (3) Defamation (Slander Per Se); (4) Violation of the UCL; (5) Violation of the DTSA; (6) Violation of the CUTSA; and (7) Injunctive Relief. *See generally*, Counterclaims.

On July 7, 2020, Counterdefendants filed this Motion seeking to strike averments in the Counterclaims concerning Curitec's business model (Counterclaim, ¶ 50) and its history of regulatory violations with the IRS and Medicare (Counterclaim, ¶¶ 19-25). *See generally*, Motion.

### IV. APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("Rule") 12(f), a party may move to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir.2010). Motions to strike under Rule 12(f) are disfavored given the limited importance of pleadings in federal practice and are not granted "unless it is clear that the matter to be stricken could have **no possible bearing** on the subject matter of the litigation." *Simplicity Int'l v. Genlabs Corp.*, 2010 WL 11515296, at *1 (C.D. Cal. Apr. 21, 2010) (emphasis added); *see also Adam v. McFarlane*, 2015 WL 12655552, at *7 (C.D. Cal. June 1, 2015) (determining Rule 12(f) motion should not be granted unless it is clear that the matter to be stricken could

have no possible bearing on the subject matter of the litigation); *Yuen v. United States*, 2011 WL 13213890, at *1 (C.D. Cal. Mar. 3, 2011) ("Because of the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored."); *Kohler v. Island Rests., LP*, 280 F.R.D. 560, 563–64 (S.D.Cal.2012) ("12(f) motions are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."). When ruling on a Rule 12(f) motion, the Court liberally construes the complaint in favor of the non-moving party and draws all reasonable inferences in favor of the claimant. *Gonzalez v. United States,* 2014 WL 3661323, at *1 (S.D. Cal. July 22, 2014). Background or historical allegations should not be stricken unless prejudicial and allegations "contribut[ing] to a full understanding of the complaint as a whole need not be stricken." *In re Facebook PPC Advertising Litigation*, 709 F.Supp.2d 762, 773 (N.D.Cal.2010).

## V.     DISCUSSION

### A.     The Court Should Not Strike Averments in the Counterclaims Regarding Curitec's Business Model.

Counterdefendants move to strike the averments in paragraph 50 of the Counterclaims concerning Curitec's business model. *See* ECF Docket Number 44-1, Memorandum of Points and Authorities in Support of Motion ("Mem."), p. 5. Counterdefendants, however, fail to establish that these averments are redundant, immaterial, or impertinent. To the contrary, Curitec's averments provide pertinent and material background information and context into the business and competitive disparities between Curitec and AMT, and AMT's motive and purpose to unlawfully compete against Curitec. As courts have determined, these averments are not subject to be stricken without a showing of undue prejudice, which Counterdefendants fail to establish. *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) ("allegations that provide background information, historical material, "or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to

defendant"); *see also In re Facebook PPC Advertising Litigation*, 709 F.Supp.2d at 773 (same). Counterdefendants fail to demonstrate any resulting prejudice from the averments concerning Curitec's unique business model which Counterdefendants have sought to misappropriate through their access and use of its trade secrets. Counterdefendants, also, do not explain why averments concerning Curitec's business model are "redundant." The Motion should, thus, be denied as to paragraph 50 of the Counterclaims.

### B. The Court Should Not Strike Averments in the Counterclaims Regarding AMT's Pattern of Unfair Competition.

Counterdefendants also seek to strike averments in paragraphs 19-25 of the Counterclaims regarding its publicly-available and well-documented history of regulatory violations that have allowed AMT to monopolize the wound care market to the detriment of competitors. *See* Mem., pp. 4-5. These averments should not be stricken as they are pertinent and material to the theories and elements underlying the Counterclaims.

Since its inception in 1994, AMT has knowingly and willfully ignored legal and regulatory requirements in pursuit of profit maximization and market share dominance. For the first 13-years of its existence, AMT's failed to pay ***any*** federal income tax or file a single tax return which ultimately resulted in taxes and penalties of approximately ***$17.8 million***. Counterclaims, ¶ 19. Indeed, AMT's Principal and Chief Executive Officer, G. Del Signore, brazenly acknowledged that AMT's failure to pay its taxes or file tax returns was knowing and willful, as he was just too busy and that he had too much paperwork to take the time to file returns. Counterclaims, ¶ 20. In addition to its tax delinquency, AMT paid ***$35 million*** to resolve claims by Medicare for improper and inflated billings submitted by AMT. Counterclaims, ¶¶ 22-25. These regulatory violations evidence and support AMT's purpose, motive, and long-standing pattern of conduct. *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 2011 WL 13152893, at *6 (N.D. Cal. Oct. 27, 2011)(denying motion to

strike averments of regulatory investigations and settlement as premature and relevant in providing factual background of the case). At a minimum, these averments constitute a pattern of misconduct and mismanagement at AMT, and Counterdefendants' knowing and willful policy of violating laws to unfairly compete in the market which are relevant and pertinent to Counterclaimants' request for punitive and exemplary damages.[9] *See e.g., Corson v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 10068136, at *8 (C.D. Cal. July 18, 2013) ("Courts have denied motions to strike where the information at issue provided background needed to establish a pattern of misconduct or to establish Defendant's knowledge or willfulness."); *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 671–72 (C.D.Cal.2000) (denying motion to strike where facts about Defendant's general business practices established a "pattern of mismanagement" relevant to the "willfulness" element of Plaintiff's claim); *Guzman v. Bridgepoint Educ., Inc.*, 2013 WL 593431, at *5–6 (S. D. Cal. Feb.13, 2013) (denying motion to strike where allegations regarding a Defendant College's military recruiting tactics were relevant to establishing a "pattern of misconduct" even though Plaintiff had not experienced the military recruiting tactics). Counterdefendants' contention that they will be "prejudiced in incurring the expense and cost of litigating spurious, irrelevant issues" is also unavailing. There are no issues to be litigated as AMT's history of regulatory violations are judicially noticeable and matters of public record that are detailed in AMT's bankruptcy filings.

Counterdefendants fail to carry their burden to demonstrate that these averments could have no possible bearing on the subject matter of the litigation. The Motion should, therefore, be denied as to paragraphs 19-25 of the Counterclaims.

///

///

---

[9] "[W]illful and intentional conduct amounts to oppression, malice or fraud within the meaning of Civil Code section 3294[.]" *Cty. of Orange v. Great Lakes Reinsurance (UK) PLC*, 2013 WL 12142602, at *3 (C.D. Cal. Jan. 23, 2013).

## VI. CONCLUSION

Curitec's business model and AMT's pattern of regulatory and legal violations provide pertinent and material background information to the Counterclaims. They establish the purpose, motive, and pattern of Counterdefendants' unlawful activities and internal policies that have resulted in the unlawful, unfair, and fraudulent business practices aimed at Counterclaimants. Counterclaimants, therefore, respectfully request that the Court deny the Motion. To the extent the Court is inclined to grant the Motion (in its entirety or in part), Counterclaimants request leave to amend their Counterclaims.

Date: August 3, 2020         **GODES & PREIS, LLP**

By: _/s/ Benjamin G. Reynolds_
Joseph M. Preis
Benjamin G. Reynolds
Attorneys for Defendants
NICK PERCIVAL; CURITEC, LLC; MARIA FERNANDEZ AND TECH LOGIC, LLC
And Counterclaimants
CURITEC, LLC and NICK PERCIVAL

**COUNTERCLAIMANTS' OPPOSITION TO COUNTERDEFENDANTS' MOTION TO STRIKE COUNTERCLAIMS**